IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**ROY L. BUNN**,

          Plaintiff,

vs.

**MICHAEL J. ASTRUE,**
Commissioner of Social Security,

          Defendant.

Civil Case No. 08-1323-KI

OPINION AND ORDER

    James S. Coon
    Kimberly K. Tucker
    Swanson Thomas & Coon
    820 S.W. Second Avenue, Suite 200
    Portland , Oregon  97204

        Attorney for Plaintiff

    Kent S. Robinson
    Acting United States Attorney
    District of Oregon

Page 1 - OPINION AND ORDER

Adrian L. Brown
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, Oregon 97204-2902

Kathryn A. Miller
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, Washington 98104-7075

       Attorneys for Defendant

KING, Judge:

Plaintiff Roy Bunn brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying plaintiff's application for supplemental security income benefits ("SSI"). I affirm the decision of the Commissioner.

## BACKGROUND

Plaintiff filed an application for SSI on March 24, 2005. The application was denied initially and upon reconsideration. After a timely request for a hearing, plaintiff, represented by counsel, appeared and testified before an Administrative Law Judge ("ALJ") on October 30, 2007.

On April 8, 2008, the ALJ issued a decision finding that plaintiff was not disabled within the meaning of the Act and therefore not entitled to benefits. This decision became final when the Appeals Council declined to review the ALJ's decision on September 12, 2008.

Page 2 - OPINION AND ORDER

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act. 42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability. The claimant has the burden of proof on the first four steps. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007), cert. denied, 128 S. Ct. 1068 (2008); 20 C.F.R. §§ 404.1520 and 416.920. First, the Commissioner determines whether the claimant is engaged in "substantial gainful activity." If the claimant is engaged in such activity, disability benefits are denied. Otherwise, the Commissioner proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one "which significantly limits [the

claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) and 416.920(c). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past. If the claimant is able to perform work which he performed in the past, a finding of "not disabled" is made and disability benefits are denied. 20 C.F.R. §§ 404.1520(e) and 416.920(e).

If the claimant is unable to perform work performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. Parra, 481 F.3d at 746. The claimant is entitled to disability benefits only if he is not able to perform other work. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). Substantial evidence is more than a "mere scintilla" of the evidence but less than

a preponderance.  Id.  "[T]he commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision."  Batson v. Barnhart, 359 F.3d 1190, 1193 (9th Cir. 2003) (internal citations omitted).

## THE ALJ'S DECISION

The ALJ found plaintiff had the following severe impairments:  borderline intellectual functioning, diabetes mellitus, emphysema, drug addiction, and headaches.  However, the ALJ did not find that these impairments met or medically equaled the requirements of any of the impairments listed in Appendix 1, Subpart P of part 404 of the Social Security Regulations.  The ALJ concluded plaintiff suffered from no exertional limitations, but was limited to simple, routine, repetitive work with no concentrated exposure to fumes, gases or hazardous work environments.  Someone with this residual functional capacity ("RFC") could perform work as a hardware assembler, a sweeper, and a hand packer.

## FACTS

Plaintiff, born in 1952, alleges disability due to headaches, borderline intelligence, diabetes and emphysema.  Plaintiff did not graduate from high school.  He has a spotty work history; he worked in a ship yard for three years "off and on," worked for two years at the Pendleton Wool Mill, and worked for sixteen months as a janitor.  Tr. 507.  In between these jobs, he was involved in criminal activity, including Robbery in the Third Degree, Theft, and numerous Possessions of Heroin.  He was incarcerated for a total of five years.  He was addicted to heroin, and occasionally used cocaine, for many years.  He attended alcohol and drug treatment programs on four separate occasions.
Page 5 - OPINION AND ORDER

When David Gostnell, Ph.D., tested plaintiff, he concluded plaintiff had a full scale IQ of 70. Two years later, Tom Dooley, Psy.D., tested plaintiff and concluded he demonstrated a full scale IQ of 83. The State agency medical examiner reviewed plaintiff's file and determined he had mild restrictions in daily living activities, no restrictions in maintaining social functioning, no episodes of decompensation, but moderate restrictions in concentration, persistence or pace.

When Dr. Dooley tested him, Dr. Dooley noted that plaintiff rushed through the Minnesota Multiphasic Personality Inventory–II ("MMPI-II"). Dr. Dooley opined,

> Mr. Bunn appeared to rush through the vast majority of this test in an inordinately fast amount of time based on what it took him to do the first two columns and based on his poor reading abilities. He presented with a very elevated scale on nearly all measures, suggesting that this test is invalid. It also appeared to exaggerate symptoms and contradicted his emotional presentation and narrative data.

Tr. 510. Dr. Dooley explained that he had given plaintiff the MMPI towards the end of the day and that, because plaintiff had rushed through it, the test was probably not "an accurate or valid result," and "[h]e appeared to rush through the MMPI testing, thus invalidating it." Tr. 508, 512. Dr. Dooley also commented that it was "unclear if [plaintiff] understood the directions [on the Trail Making Test] as he made numerous errors and he may not have understood the concept." Tr. 510. Finally, Dr. Dooley gave plaintiff the Test of Memory Malingering. Dr. Dooley concluded the scores did "not appear to indicate a malingering[.]" Id.

## DISCUSSION

I.  Plaintiff's Credibility

Plaintiff challenges the ALJ's finding on plaintiff's credibility, arguing that the ALJ misconstrued Dr. Dooley's report.

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis.  In the first stage, the claimant must produce objective medical evidence of one or more impairments which could reasonably be expected to produce some degree of symptom.  Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007).  The claimant is not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom.  In the second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of the symptoms.  If there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony "only by offering specific, clear and convincing reasons for doing so." Id.

Plaintiff properly points out that the ALJ misconstrued some of Dr. Dooley's findings when he stated,

> There were some mentions in the evaluation of the possibility of malingering due to numerous errors.  A Minnesota Multiphasic Personality Inventory-II (MMPI-II) showed elevated scales on nearly all measures suggesting the test to be invalid with exaggerated symptoms.  The TOMM malingering test also indicated the possibility of malingering.

Tr. 16.  The ALJ also reported,

> [H]e appeared to exaggerate his symptoms on testing during the most recent evaluation in December 2007.  Dr. Dooley noted the Trail Making Test showed multiple mistakes.  On the MMPI-@ [sic], the claimant presented with a very elevated scale on nearly all measures, suggesting the test was invalid.  He was also noted to exaggerate all symptoms and contradicted his emotional presentation and narrative data.  This is most disturbing and places great doubt on his veracity concerning his subjective limitations.

Tr. 20.

Page 7 - OPINION AND ORDER

Dr. Dooley, however, specifically found that the TOMM test did "not appear to indicate a malingering[.]" Tr. 510. While Dr. Dooley noted plaintiff made multiple mistakes on the Trail Making Test, he also said, "he may not have understood the concept." Id. Finally, with respect to the MMPI-II, Dr. Dooley noted plaintiff appeared to rush through the test. He then stated, "He presented with a very elevated scale on nearly all measures, suggesting that this test is invalid. It also appeared to exaggerate symptoms and contradicted his emotional presentation and narrative data." Id. I read this to mean that the test results were invalid because they reflected exaggerated symptoms and contradicted how he presented himself to Dr. Dooley and how he described his problems, not that plaintiff exaggerated his symptoms. If the test is invalid, it does not give a correct picture of the person being profiled. Dr. Dooley made this clear in his conclusion when he said, "[Plaintiff] appeared to rush through the MMPI testing, thus invalidating it." Tr. 512. I agree with the Commissioner that these test results certainly show plaintiff's unwillingness to give full effort, which is relevant to his credibility, but that does not mean he "appeared to exaggerate his symptoms during testing." Tr. 20.

Nevertheless, despite the ALJ's errors in reading Dr. Dooley's report, the ALJ gave ample reasons to find plaintiff less than credible. He pointed to the lack of corroborative medical evidence for plaintiff's physical complaints, lack of effort on the pulmonary testing, no medical opinion supporting plaintiff's claimed physical limitations, spotty work history, involvement in criminal activity to support his drug addiction, and ability to work despite his borderline intellectual functioning.[1] These are clear and convincing reasons to find plaintiff lacking in

---

[1] Plaintiff testified that he stole and did odd jobs to support his two bag a day heroin habit, costing $75 to $100 a day.

Page 8 - OPINION AND ORDER

credibility. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (lack of objective medical evidence is relevant factor); Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (lack of cooperation valid reason as well as poor work history); Drouin v. Sullivan, 966 F.2d 1255, 1258 (9th Cir. 1992) (work "with a fair amount of success" undermines claim of disability).

The fact that the ALJ improperly considered some reasons for finding plaintiff's credibility undermined does not mean that the ALJ's entire credibility assessment is improper. Batson v. Commissioner of Soc. Sec. Admin., 359 F.3d 1190, 1197 (9th Cir. 2003). I find substantial evidence supports the ALJ's conclusions about plaintiff's credibility.

II.     Residual Functional Capacity

Plaintiff argues that the ALJ's RFC, limiting plaintiff to simple, routine, repetitive work, did not capture his problems with concentration, persistence or pace.

Hypothetical questions posed to a vocational expert must specify all of the limitations and restrictions of the claimant. Edlund v. Massanari, 253 F.3d 1152, 1160 (9th Cir. 2001). If the hypothetical does not contain all of the claimant's limitations, the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy. Id.

Nevertheless, there is no requirement that the words from the Psychiatric Review Technique Form ("PRTF") must be used in the hypothetical. The ALJ completes the PRTF at steps two and three of the evaluation to determine if the claimant has severe mental impairments which meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. See 20 C.F.R. §§404.1520a(c) (DIB), 416.920a(c) (SSI). The PRTF's categories are considered broader than the "detailed assessment"

Page 9 - OPINION AND ORDER

required in the residual functional capacity finding and vocational hypothetical, in steps four and five.

> The psychiatric review technique described in 20 CFR 404.1520a and 416.920a and summarized on the Psychiatric Review Technique Form (PRTF) requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings. The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF.

SSR 96-8P, *4. Thus, the degrees of limitations on the PRTF are not transferred directly into the residual functional capacity determination documented in the Mental Residual Functional Capacity Assessment ("MRFCA"). Instead, the ALJ interprets them into a more detailed assessment used in step 4.

Here, the ALJ found that plaintiff suffered from moderate limitations in concentration, persistence or pace, relying in part on the assessment produced by Frank Lahman, Ph.D. Dr. Lahman translated that assessment into a functional limitation that plaintiff "is capable of understanding, remembering and carrying out simple tasks only during a normal work day/week." Tr. 201. This opinion is supported by Dr. Dooley's conclusion that plaintiff is a "good candidate for vocational rehabilitation based on his daily functioning. It appears that in the past when he has been abstinent from drugs and alcohol, he has been able to maintain uncomplicated employment." Tr. 513.

Accordingly, the ALJ did not err by failing to include in the hypothetical plaintiff's moderate limitation in maintaining concentration, persistence, or pace.  See Stubbs-Danielson v. Astrue, 539 F.3d 1169 (9th Cir. 2008) (moderate limitation in pace consistent with restriction to simple tasks as identified in medical opinion); Howard v. Massanari, 255 F.3d 577, 582 (8th Cir. 2001) (state psychologist's findings of deficiencies in concentration, persistence or pace which was interpreted into a functional capacity assessment of being "able to sustain sufficient concentration and attention to perform at least simple, repetitive, and routine cognitive activity without severe restriction of function" was adequately captured by "simple, repetitive, routine tasks" hypothetical).  Accordingly, I find that the ALJ's decision to limit plaintiff to simple, routine, repetitive work in the hypothetical adequately captured his limitations.

## CONCLUSION

The findings of the Commissioner are based upon substantial evidence in the record and the correct legal standards, and therefore the court affirms the decision of the Commissioner.

IT IS SO ORDERED.

Dated this      1st           day of February, 2010.

      /s/ Garr M. King
      Garr M. King
      United States District Judge